UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GOTHAM INSURANCE COMPANY,

      Plaintiff,

v.                     Case No: 2:16-cv-15-FtM-99CM

WEST COAST FIRE PROTECTION
CORP., GIOVANNI R. BLANCO,
MARIA FORESTE, individually,
and as parents and natural
guardians of E.F., and
RAYMOND FORESTE,
individually, and as parents
and natural guardians of
E.F.,

      Defendants.

---

## OPINION AND ORDER

    This matter comes before the Court on the parties' cross
Motions for Summary Judgment (Docs. ##79, 80, 82), and supporting
materials (Docs. ##64-78, 81), filed on June 19, 2017. The parties
filed responses in opposition to each other's motions (Docs. ##86,
87, 88, 89) on July 13, 2017. Both parties seek judgment in their
favor as to plaintiff's duty to defend and indemnify defendants in
an underlying auto accident lawsuit pursuant to a commercial
general liability insurance policy and an excess/umbrella
insurance policy. For the reasons set forth below, the Court
grants summary judgment in favor of plaintiff.

**I.**

Plaintiff seeks a declaration as whether it has a duty to defend and indemnify its insureds for an underlying negligence action styled <u>Maria Foreste and Raymond Foreste, individually and as parents and natural guardians of E.F., a minor v. Giovanni Blanco and West Coast Fire Protection Corp.</u>, Case No. 2015-CA-2073, filed on August 10, 2015, in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida ("Underlying Action"). This lawsuit arises from an auto accident involving a company truck driven by defendant Giovanni Blanco which caused traumatic injuries to E.F., a minor child.

This coverage dispute centers around an auto exclusion contained in a commercial general liability insurance policy (CGL Policy) and an excess/umbrella policy (UMB Policy) that plaintiff Gotham Insurance Company (plaintiff or Gotham) issued to defendant West Coast Fire Protection Corp. (defendant or West Coast Fire) (collectively, "Policies"). (Docs. ##5-1, 5-2.)[1] Pursuant to the Policies, Gotham agreed to defend and indemnify West Coast Fire in lawsuits asserting certain types of claims, subject to certain enumerated exclusions. In its Complaint (Doc. #5), Gotham seeks a declaration that there is no coverage for the underlying claim, and West Coast Fire and Blanco have filed a counterclaim (Doc.

---

[1] Docs. ##5-1 and 5-2 are certified copies of the Policies that no party disputes for completeness.

#38), seeking a declaration that there is coverage for such occurrences and has demanded that Gotham tender its policy limits to the Forestes (E.F.'s parents). (Id. at ¶ 20.) The Forestes also contend coverage exists based upon their interpretation of the Policies, estoppel, and other theories. (Doc. #40.)

## II.

The following facts are undisputed by the parties:

### A. The CGL Policy

Gotham, a surplus-lines insurance carrier, first began issuing insurance coverage to West Coast Fire, a fire suppression contractor, in 2011, with the first policy period beginning in 2012. Renewal policies were issued each year and, as relevant here, Gotham provided CGL coverage to West Coast Fire pursuant to Policy Number GL2015FSC00161 for policy period January 19, 2015 to January 19, 2016 (the "CGL Policy"). (Doc. #5-1.) The CGL Policy carried an occurrence limit of $1,000,000 and a general aggregate limit of $2,000,000, subject to the terms, conditions, and exclusions of the policy. (Id. at 5.) The CGL Policy states, in relevant parts:

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

### 2. Exclusions

This insurance does not apply to:

### g. Aircraft, Auto or Watercraft

"Bodily Injury" or "property damage" arising out of the ownership, maintenance use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

(Doc. #5-1, pp. 13-15.) "Auto" is defined as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." (Id. at 22.)

### B. The Umbrella Policy (UMB)

Gotham provided commercial liability umbrella coverage to West Coast Fire pursuant to Policy Number UM2015FSC00064 for policy period January 19, 2015 to January 19, 2016 (the "UMB Policy"). (Doc #5-2.) The UMB Policy carried an occurrence limit of $2,000,000, subject to the terms, conditions, and exclusions of the policy. (Id. at 4.) The UMB Policy states, in relevant parts:

### 1. Insuring Agreement

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies….

### 2. Exclusions

This insurance does not apply to:

### f. Auto Coverages

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"….

(Id. at 6-7.)  "Covered auto" is defined as "only those 'autos' to which underlying insurance applies." (Id. at 17.)  "Underlying insurance" is defined as "any policies of insurance listed in the declarations under the schedule of 'underlying insurance.'" (Id. at 19.)

The Declarations page does not identify any underlying policy insurance numbers. See Doc. #5-2, p. 4, Item 6 left blank. Item 7 of the Declarations page provides:

> Item 7. Form(s) and Endorsement(s) made a part of the police at time of issue: EX00271010, IL00010910, CU00010900.

(Id.)[2]  Endorsement EX00271010 is the "Schedule of Primary Insurance," which is a chart with spaces to itemize sources of primary insurance. (Id. at 5.)  The Court sets forth the Schedule in full here:

---

[2] Although three forms are identified under Item 7, only the first and last forms are contained in the certified copy of the Policy included in the record.  Form IL00010910 is missing entirely. (Doc. #5-2.)  And the UMB Policy contains numerous forms and endorsements that are not listed under Item 7. (Id.)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE OF PRIMARY INSURANCE

This endorsement modifies insurance provided under the following:

UMBRELLA LIABILITY POLICY

### Schedule of Primary Insurance

| Name of Underlying Insurer Underlying Policy Number Underlying Policy Period | Coverage | Limit of Insurance (Underlying Limit) |
|---|---|---|
| Company: EXCLUDED<br><br>Policy Number:<br><br>Policy Term: 00/00/00 to 00/00/00 | ☐ Any Automobile Owned<br><br>☐ Automobiles Non-Owned<br><br>☐ Automobiles Hired Automobile<br><br>☐ Hired Automobile | Bodily Injury<br>$_____ each person<br>$_____ each accident<br>Property Damage<br>$_____ each accident<br>Combined Single Limit<br>$_____ each accident |
| Company: EXCLUDED<br><br>Policy Number:<br><br>Policy Term: 00/00/00 to 00/00/00 | Employer's Liability | Bodily Injury by Accident<br>$_____ each accident<br>Bodily Injury by Disease<br>$_____ policy limit<br>$_____ each employee |
| Company: GOTHAM INSURANCE COMPANY<br><br>Policy Number: GL2015FSC00161<br><br>Policy Term: 01/19/15 to 01/19/16 | Commercial General Liability<br>☒ Occurrence Form<br>☐ Claims Made Form<br>Retroactive Date: | General Aggregate<br>$ 2,000,000<br>Products Complete Operations<br>Agg. $ 2,000,000<br>Personal and Advertising Limit<br>$ 1,000,000<br>Each Occurrence Limit<br>$ 1,000,000 |
| Company:<br><br>Policy Number:<br><br>Policy Term: 00/00/00 to 00/00/00 | Other: | $_____ |
| Company:<br><br>Policy Number:<br><br>Policy Term: 00/00/00 to 00/00/00 | Other: | $_____ |

EX 0027 1010

(Doc. #5-2, p. 5.) To highlight the relevant portions of the Schedule of Primary Insurance, the Court notes that the word "EXCLUDED" was typed in the pre-printed section of the Schedule of Primary Insurance for auto coverage. No auto carrier is identified, and there is no reference to Allstate Insurance Company, which was West Coast Fire's auto insurance carrier at the time of the auto accident. The only insurance policy identified in the Schedule of Primary Insurance is the Gotham CGL Policy, GL2015FSC00161, which excludes auto coverage. See supra, Sec. II.A.

The UMB Policy also includes an "AUTO EXCLUSION ENDOREMENT," form UM00780911, which is set forth here:

## AUTO EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA POLICY**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:
(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)

| Named Insured | | |
|---|---|---|
| WEST COAST FIRE PROTECTION CORP | | |
| Endorsement Effective | Policy Number | Countersigned by |
| 01/19/15 | UM2015FSC00064 | |

(Authorized Representative)

The following exclusion is added to section **I. EXCLUSION 2**

This insurance does not apply:

To any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any "auto".

(Doc. #5-2, p. 36.) The Auto Exclusion Endorsement (form UM00780911) is not listed under Item 7 of the Declarations page, but the Declarations Page does state the following:

> THIS POLICY TOGETHER WITH THE POLICY CONDITIONS, COVERAGE PARTS AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

(Doc. #5-2, p. 4.) The "Schedule of Forms and Endorsement" lists by name and form number the Schedule of Primary Insurance, as well as the Auto Exclusion. (Id. at 31.)

**C. Underwriting and the Purchase of the Policies**

During the time that Gotham issued insurance policies to West Coast Fire, All Risks, Ltd. performed the underwriting of West Coast Fire's policies as Gotham's program manager. (Doc. #76-2, 18:5-20:5.) West Coast Fire's agent for purchasing the Policies is the Plastridge Agency, Inc.[3] (Doc. #64-1, 15:21-16:9; 17:7-18:20; Doc. #65-1.) West Coast Fire's agent for purchasing auto insurance is the Peterson Agency. (Doc. #64-1, 14:21-15:19.)

When West Coast Fire first purchased insurance through Plastridge in January 2011, West Coast Fire needed to renew CGL coverage, which was expiring. (Doc. #64-1, 21:16-24:8; Doc. #67-1, 26:21-27:2, 29:24-30:18. West Coast Fire's president, Vidal, emailed Plastridge a certificate of insurance reflecting the limits that needed to be replaced. (Doc. # 65-1, pp. 8-15); Doc.

---

[3] Plastridge is a general retail independent insurance agency. (Doc. #67-1, 11:1-4.)

#64-1, 21:16-24:8; Doc. #67-1, 29:24-30:18.)  In connection with procuring insurance for West Coast Fire in 2011, Plastridge had obtained West Coast Fire's insurance application from the prior year.  Attached to the application were documents setting forth the insurance requirements of general contractors for whom West Coast Fire worked, requiring West Coast Fire to have $1,000,000 in auto overage and CGL coverage in the amount of $1,000,000 for each occurrence and $2,000,000 general aggregate.  (Doc. #65-1, pp. 16-36; Doc. #64-1, 26:11-27:2.)  In 2011, West Coast Fire purchased, through Plastridge, a CGL policy issued by Interstate Fire & Casualty Co. with occurrence limits of $1,000,000 and general aggregate limits of $2,000,000.  (Doc. #68-1, pp. 127-31).  West Coast Fire did not purchase an umbrella liability policy in 2011.

In 2012, 2013, 2014, and 2015, West Coast purchased, through Plastridge, CGL and umbrella liability policies issued by Gotham. (Doc. #64-2, 48:25-49:5; 55:3-16; 57:9-17; 59:21-60:1; Doc. #76-1, 13:12-15; 17:1-10.)  The record shows that each year, Plastridge would send West Coast Fire the application for renewal, which Vidal would review, sign, and return.  (Doc. #67-1, 109:8-112:3)  After West Coast Fire received the renewal quotes, Vidal "usually agreed and signed whatever forms that they had that they sent over to me and sent them the deposit check and the policy would be renewed."  (Doc. #64-1, 32:20-25)  There is no evidence that West Coast Fire ever requested auto coverage from Gotham and

never applied for auto insurance through Plastridge. With each renewal, a blank application would be sent to Vidal who would type information into the document, including coverages he wanted. (Doc. #64-1, 85:3-18.) The questions pertaining to auto coverage were left blank. (Doc. #81-1, ¶¶ 6-7.) And when West Coast Fire was asked to list all liability/compensation policies in force to apply as underlying insurance, West Coast Fire would list the CGL Policy, and did not list any auto liability policies. (Id. at ¶ 11.) In each of the four years that Gotham issued insurance policies to West Coast Fire, including the policy year at issue, All Risks provided a quote and binder to Plastridge for the umbrella liability policy, which included the Auto Exclusion Endorsement that was transmitted to West Coast Fire for review.[4]

There were some questions regarding whether auto coverage should have been included in the UMB Policy, beginning in 2013. In 2013, in an internal email from an underwriter employed by All Risks, states: "Please advise if form CU3104(09/08) FLORIDA EXCESS UNINSURED MOTORISTS COVERAGE should be on this Gotham Excess policy. If yes, please provide limits to be typed in. If not, please issue a revised binder removing this form." (Doc. #79-2,

---

[4] Although defendants dispute that Plastridge ever delivered a copy of the 2015-2016 UMB Policy to West Coast Fire for review because they could not find the correspondence that sent the quote, Connor Lynch, Plastridge's corporate representative, testified that the company's activity report showed that it was sent to West Coast Fire with a finance contract, which was received and reviewed. (Doc. #67-1, 114:6-115:10; 152:4-155:18.)

pp. 2-3.)  In 2014, an internal email to a Senior Underwriter at All Risks requests that an uninsured motorist rejection form be added to the UMB Policy.  (Id. at 4-5.)  In 2015, an internal email from an All Risks underwriter states: "Please advise if form CU3104(09/08) FLORIDA EXCESS UNINSURED MOTORISTS COVERAGE should be on the policy."  (Id. at 6.)  On that same date, an Associate Underwriter at All Risks forwards the email to the Senior Underwriter and states: "Should this form be in the policy?  I don't see that any exclusion forms were attached to the quote for them to reject.  So, nothing was received back to exclude."  Id. But it is undisputed that auto coverage was never added to the UMB Policy and that the Auto Exclusion Endorsement was included in the UMB Policy.

### D. The Auto Accident, Lawsuit, and Settlement Demands

On or about July 28, 2015, E.F., a minor child, was struck by an automobile owned by West Coast Fire that was being driven by West Coast Fire employee, and defendant, Giovanni R. Blanco. (Doc. 5, ¶ 18.)  A "claim" against West Coast Fire occurred on or around August 10, 2015, when the Forestes filed a negligence action against West Coast Fire seeking damages arising from the auto accident in state court (the Underlying Action).  (Doc. #38-1.) At the time of the accident, West Coast Fire had auto insurance with $1,000,000 policy limits with Allstate, which it had continuously since 2004.  (Doc. #64-1, 12:10-13:8; 14:13-15:15.)

Allstate retained attorney Ronald Arend to defend West Coast Fire and Blanco in the Underlying Action. (Doc. #64-1 at 62:14-21.) The Underlying Action is still pending and Arend continues to represent West Coast Fire in the case. (Id. at 62:22-24; 96:2-4.)

On September 17, 2015, Gotham claims examiner Chris Davis[5] sent an email to Curtis Hunter of Allstate, informing him that there was coverage under the Policies for the auto accident, stating:

> This letter will memorialize our earlier conversation where I confirmed that we have excess coverage of $2,000,000 for this loss. Please have defense counsel add me to their report distribution list.

(Doc. #77-1, pp. 25-26.) By letter dated September 21, 2015 to the Forestes' counsel, Davis stated:

> This will acknowledge receipt of your letter dated 8/20/2015 to Allstate Insurance advising that you are representing the above named claimant for injuries suffered in an incident on 7/28/2015. Gotham Insurance Company provides excess coverage for West Coast Fire Protection Corp.

(Id. at 23-24.)

On October 12, 2015, the Forestes' counsel sent a time-sensitive settlement demand addressed to Arend that requested the policy limits under both the Allstate and Gotham policies:

> We are hereby demanding that your clients tender any and all available insurance policy limits in exchange for a full release of your clients. Based on your clients'

_____

[5] Davis is employed by ProSight Specialty Insurance Company. Gotham is wholly-owned by ProSight. (Doc. 76-1, 5:21-24.)

prior representation, there is Three Million Dollars
($3,000,000) of coverage available. If your clients
have more than Three Million Dollars ($3,000,000) in
coverage available to them, then this demand is for that
total amount.

(Doc. #66-1, pp. 51-53.) The settlement demand expired on October

26, 2015. (Id.)

On October 21, 2015, five days prior to the expiration of the

settlement demand, Donna Matt, a Gotham liability claims manager,

called Mike Vidal, West Coast Fire's president, and sent him an

email, relying on an exclusion from coverage contained in the

policy provisions that expressly excludes coverage for the auto

accident, writing:

I unsuccessfully attempted to reach you by telephone but
and [*sic*] due to the timing issues I am sending this e-
mail so that you may have this information as soon as
possible. Gotham advises that the Umbrella Liability
policy issued to West Coast Fire Protection Corp. by
Gotham specifically excludes coverage for claims arising
out of automobile losses and a more detailed analysis of
our position will be forthcoming. As such, Gotham must
advise Ms. Kreizinger (Forestes' counsel) that West
Coast Fire Protection Corp.'s Umbrella Liability policy
does not provide coverage for the claim presented by her
clients and Gotham is therefore unable to contribute to
any settlement. Gotham will do so tomorrow, October 22,
2015.

(Doc. #66-1, pp. 54-55.)

In a letter from Davis to Vidal dated October 22, 2015, four

days prior to the expiration of the settlement demand, Davis wrote

to reject the settlement demand, stating:

We are obliged to inform you that the allegations and
damages presented in the captioned complaint are
specifically excluded by the Commercial Liability

Umbrella policy with Gotham. Gotham denies any
obligation to defend or indemnify West Coast Fire
Protection Corp. and/or their employees for uncovered
damages.

(Doc. #66-1, pp. 56-61.) The letter directed attention to the

auto exclusion sections of the UMB Policy and enclosed a certified

copy of the policy. (Id.)

On October 23, 2015, West Coast Fire's counsel sent a letter

to Davis, stating:

Belatedly, your client has disclaimed coverage based on
an exclusionary provision. Your error in not timely
asserting your coverage position has resulted in
plaintiff's untimely demand of three million dollars
($3,000,000). Accordingly, and irrespective of whether
coverage existed as an initial matter, my client and the
claimants have relied to their detriment on the
statement of availability of coverage in your previous
representations.

(Doc. #66-1, pp. 38-39.)

On December 14, 2015, the Forestes' counsel wrote to Davis,

outlining arguments for why the UMB Policy is ambiguous and that

coverage should be afforded under its terms, and making a final

settlement offer of $2,000,000, or a greater amount if additional

insurance coverage was available. (Doc. #78-9.)

On January 4, 2016, Gotham responded to the Forestes'

settlement demand and reiterated its position that there was no

coverage for the auto accident under the Gotham policies. (Doc.

#78-15.) The Underlying Action remains pending.[6]

---

[6] Although some courts within the Eleventh Circuit generally
recognize that an insurer's duty to indemnify is not ripe for

- 14 -

# III.

A court may grant summary judgment only if satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it goes to "a legal element of the claim under the applicable substantive law" and thus may impact the case's outcome. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).

"The burden of establishing that there is no genuine issue of material fact lies with the moving party." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). "[O]nce the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial," the party opposing

---

adjudication unless and until the insured has been held liable in an underlying action, Evanston Ins. Co. v. Gaddis Corp., 145 F. Supp. 3d 1140, 1153 (S.D. Fla. 2015) (collecting cases), "[i]f the Court determines that there is no duty to defend, then there is no duty to indemnify as the duty to defend is much broader than the duty to indemnify." Essex Ins. Co. v. Zota, 607 F. Supp. 2d 1340, 1358 (S.D. Fla. 2009). Because the Court finds that there is no duty to defend in this case, the case is ripe for review despite the fact that the Underlying Action is ongoing. The Court otherwise exercises its discretion and will allow Gotham's claim to proceed in this separate federal declaratory action. See Mid-Continent Casualty Co. v. Van Emmerik Custom Homes, Inc. et al., 2:16-cv-819-Ftm-99MRM, 2017 WL 700226 (M.D. Fla. Feb. 22, 2017).

summary judgment must "set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Id. at 1576–77. In ruling on the motion, the court must view all evidence and draw all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

Summary judgment should be denied not just where the parties disagree on issues of material fact, but also "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983); see also Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007) ("If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."). Put simply, if the resolution of a material fact or the inference to be drawn therefrom presents a "he said, she said" scenario, and if the record has evidence genuinely supporting both sides of the story, then summary judgment is not appropriate.

Under Florida law,[7] "[i]t is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.  The duty to defend must be determined from the allegations in the complaint." Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442–43 (Fla. 2005) (citations omitted).  This duty to defend exists "even if the allegations in the complaint are factually incorrect or meritless." Id. at 443. "If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." Category 5 Mgmt. Grp. LLC v. Companion Prop. & Cas. Ins. Co., 76 So. 3d 20, 23 (Fla. 1st DCA 2011).  Any doubt as to the duty to defend is resolved in favor of the insured. Id.

Insurance contracts must be construed in accordance with the plain language of the policy.  Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003).  "Further, we consider that '[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is

---

[7] In this diversity action, state law law controls.  Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1148 (11th Cir. 2010).  The parties do not dispute that the policy was executed in Florida and therefore Florida law applies to the substantive issues in this case.

considered ambiguous.'" Id. (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). An ambiguous provision is construed in favor of the insured and strictly against the drafter. Id. The Florida Supreme Court has consistently held that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Id.

Gotham moves for summary judgment on the basis that the damages sought by the Forestes in the state action are not covered by the Policies because they fall within the auto exclusion. Thus, Gotham asserts that as a matter of law it has no duty to defend in the state action, or to indemnify. Defendants respond that the UMB Policy is ambiguous and the Auto Exclusion Endorsement is not a part of the policy. Because of the policy's ambiguity and internal inconsistencies, which should be construed against the insurer as drafter, defendants argue that coverage should be afforded.

## A. The Policy Language and Ambiguity

The UMB Policy's Coverage Form clearly provides an exclusion for any bodily injury arising from the use of any auto that is not a covered auto. (Doc. #5-2, pp. 6-7.) "Covered auto" is defined as only those autos to which underlying insurance applies. (Id. at 17.) "Underlying insurance" is defined as "any policies of insurance listed in the declarations under the schedule of

underlying insurance." (Id. at 19.)

Defendants argue that because the Auto Exclusion Endorsement form is not listed at "Item 6. Underlying Policy Number(s)" on the Declarations page, it is not a part of the UMB Policy. Defendants further argue that this blank is also inconsistent with the Schedule of Primary Insurance, which lists the CGL Policy as underlying insurance. Additionally, defendants argue ambiguity by pointing out that Item 7 does not include all of the forms and endorsements made a part of the Policy, including the Auto Exclusion Endorsement form, which cannot be considered a part of the UMB Policy because it is not listed. Defendants argue that any ambiguity should be resolved in favor of coverage.

Although courts should narrowly construe exclusions to an insurance policy, "exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." C.R. Bard, Inc. v. Liberty Mut. Ins. Co., 473 F. App'x 128, 132 (3d Cir. 2012). An insurer has no duty to defend if the allegations in the underlying complaint show the applicability of a policy exclusion. Essex Ins. Co. v. Big Top of Tampa, Inc., 53 So. 3d 1220, 1223–24 (Fla. 2d DCA 2011); State Farm Fire and Cas. Co. v. Tippett, 864 So. 2d 31, 35 (Fla. 4th DCA 2003). "Because they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." Category 5 Mgmt. Grp., 76 So. 3d at 23.

The Declarations page to the UMB Policy states under Item 7 that the Schedule of Primary Insurance is a "form or endorsement made a part of the policy at the time of issue." (Doc. #5-2, p. 4.) The Schedule of Primary Insurance excludes auto coverage. Indeed, in the section titled "Name of Underlying Insurer, Underlying Policy Number, Underlying Policy Period," the word "EXCLUDED" is written. Id. The Court is not persuaded by the argument that the Auto Exclusion Endorsement is not a part of the UMB Policy simply because it is not listed on the Declarations page. The Declarations page states that "THIS POLICY TOGETHER WITH THE POLICY CONDITIONS, COVERAGE PARTS AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY." (Id.) This readily leads to the conclusion that the Auto Exclusion Endorsement was a part of the UMB Policy even though it was not listed under Item 7. Furthermore, the CGL Policy is the only underlying insurance identified on the Schedule of Primary Insurance, and the CGL Policy specifically excludes coverage for auto. (Doc. #5-1, pp. 17-18.)

The Court also finds it persuasive that the Auto Exclusion Endorsement was included each renewal year, and was reviewed by West Coast Fire, and auto coverage was never requested by the insured. There is no evidence or testimony offered by any company witness, nor by West Coast Fire's president, that auto coverage was ever requested or included under the Policies. Although

defendants now rely on an ambiguity argument to read auto coverage into the Policies, when the Policies are read as a whole, and giving every provision its full meaning and operative effect, it seems readily apparent that auto coverage is excluded.  <u>See</u> Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application thereof or any rider or endorsement thereto."); <u>Steadfast Ins. Co. v. Celebration Source, Inc.</u>, Case No. 15-61668, 2017 WL 416118, at *4 (S.D. Fla. Jan. 27, 2017) (applying rules of insurance policy construction set forth in Fla. Stat. 627.419(1) to surplus lines insurance policies); <u>Swire Pacific Holdings</u>, 845 So. 2d at 166.  Thus, the Court finds no ambiguity or conflict within the Policies.[8]

Moreover, even if the UMB Policy is internally inconsistent by failing to include the Auto Exclusion Endorsement at Item 7 and by stating that it is part of the policy, Florida courts have found that the endorsement controls to the extent an endorsement is inconsistent with the body of a policy.  <u>See</u> <u>Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London</u>, 696 So. 2d 376, 379

---

[8] The Forestes also state that the Auto Exclusion Endorsement is not countersigned, which adds to the ambiguity of the policy. However, because the endorsement was effective the same day as the UMB Policy, no countersignatures were required as stated on the face of the endorsement.  <u>See</u> Doc. #5-2, p. 36.

(Fla. 1st DCA 1997) (citing 13A John A. Appleman and Jean Appleman, Insurance Law & Practice §§ 7537-8).

**B. Coverage by Estoppel**

Defendants alternatively argue that even if auto coverage is excluded under the Policies, coverage by estoppel would still apply, triggering Gotham's duty to defend and indemnify. In support, defendants state that because Gotham represented to them that it would provide coverage for the Underlying Action and then retracted coverage after a time-sensitive settlement demand was made, West Coast and Blanco lost the opportunity to settle and are subjected to the entry of a potential excess judgment against them.

The general rule in Florida is that the doctrine of estoppel "may not be used to create or extend coverage" where none originally existed. AIU Ins. Co. v. Block Marina Inv., Inc., 544 So. 2d 998, 1000 (Fla. 1989). The Florida Supreme Court recognized a "very narrow exception" to this rule in Crown Life Ins. Co. v. McBride, 517 So. 2d 660 (Fla. 1987), holding that "the doctrine of promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or injustice." AIU, 544 So. 2d at 1000 n.1. "When an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." Cigarette Racing Team, Inc. v. Parliament Ins. Co., 395 So. 2d 1238, 1239-

40 (Fla. 4th DCA 1981).  See also Solar Time Ltd. v. XL Specialty
Ins. Co., 142 F. App'x 430, 434 (11th Cir. 2005) (quoting Doe, 653
So. 2d at 373).  Whether the exception to the rule applies depends
on whether the insurer assuming the defense prejudiced the insured.
Doe on Behalf of Doe v. Allstate Ins. Co., 653 So. 2d 371, 374
(Fla. 1995).  Coverage by estoppel claim requires a representation
of material fact, reasonable reliance, and a detrimental change in
position (i.e., prejudice) as a result of the reliance.  See Tome
v. State Farm Fire & Cas. Co., 125 So. 3d 864, 867 (Fla. 4th DCA
2013).

The Florida Supreme Court observed in Doe:

[T]he holding in Cigarette Racing Team properly takes
into account the import of an insurer's obligation to
defend within a policy of liability insurance.  This
obligation has long been recognized by this Court.  In
fulfilling its promissory obligation to defend, the
insurer employs counsel for the insured, performs the
pretrial investigation, and controls the insured's
defense after a suit is filed on a claim.  The insurer
also makes decisions as to when and when not to offer or
accept settlement of the claim.... This obligation
amounts to a fiduciary duty requiring the exercise of
good faith....

Thus, when the insurer undertakes the defense of a claim
on behalf of one claiming to be an insured, we have
recognized substantial duties on the part of both the
insurer and the insured. If an insurer erroneously
begins to carry out these duties, and the insured, as
required, relies upon the insurer to the insured's
detriment, then the insurer should not be able to deny
the coverage which it earlier acknowledged.  However,
we clearly state that the insured must demonstrate that
the insurer's assumption of the insured's defense has
prejudiced the insured.  It is the fact that the insured
has been prejudiced which estops the insurer from

denying the indemnity obligation of the insurance
policy.

Doe, 653 So. 2d at 373–74.

Here, the Court is not convinced that this case fits within
the narrow estoppel exception to create insurance coverage under
Florida law. This is not a case where the insurer represented to
its insured that it was assuming responsibility for the insured's
defense after the underlying claim was made on which the insured[9]
relied to its detriment, and then the insurer withdrew that
defense. Indeed, the record does not show that Gotham ever
provided a defense in state court on behalf of West Coast Fire or
Blanco, nor represented to them that it would attempt to settle
the claim on their behalf or that it was negotiating a settlement
on their behalf. Instead, Allstate's counsel controlled West
Coast Fire's defense in the Underlying Action. Vidal, West Coast
Fire's president, testified that following the accident he first
called Allstate and mainly dealt with that company, but did speak
to an employee of Plastridge, and had no conversations with anyone
at Gotham regarding coverage for the claim. (Doc. #64-1, 71:3-
19.) The first time Gotham spoke with and corresponded with Vidal
regarding the claim was when it informed him on October 21, 2015
that there was an exclusion from coverage contained in the policy

---

[9] The Court rejects as irrelevant any argument as to the
reliance and prejudice to the Forestes as the inquiry under Florida
law is the reliance and prejudice to the insured, not a third
party.

provisions that expressly excludes coverage for the auto accident. (Doc. #66-1, pp. 56-61.) C.f., Cigarette Racing Team, 395 So. 2d at 1240 (finding estoppel where insurance company assumed defense of its insured for sixteen months); Florida Physicians Ins. Co. v. Stern, 563 So. 2d 156 (Fla. 4th DCA 1990) (coverage by estoppel found where insurer assumed defense of its insured for fourteen months); Coregis Ins. Co. v. McCollum, 961 F. Supp. 1572, 1578 (M.D. Fla. 1997) (noting that "the prejudice to the insured that resulted in [Doe and Cigarette Racing Team] occurred when the insurer assumed the insured's defense without a reservation of rights or notice to the insured of possible noncoverage until several months or even years after the underlying claim had been made" and denying insured's estoppel defense as a matter of law for failure to demonstrate prejudice).

The Court declines to impose coverage that does not otherwise exist under the Policies.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Summary Judgment (Doc. #82) is **GRANTED**.

2. Defendants Maria and Raymond Foreste's Motion for Summary Judgment (Doc. #79) is **DENIED**.

3. Defendants West Coast Fire Protection Corp. and Giovanni R. Blanco's Motion for Summary Judgment (Doc. #80) is **DENIED**.

4. It is hereby declared that Gotham Insurance Company does not owe a duty to defend or indemnify West Coast Fire Protection Corp. and Giovanni Blanco in the matter of <u>Maria Foreste and Raymond Foreste, individually and as parents and natural guardians of E.F., a minor v. Giovanni Blanco and West Coast Fire Protection Corp.</u>, Case No. 2015-CA-2073.

5. Judgment is entered in favor of Gotham Insurance Company and against West Coast Fire Protection Corp, Giovanni R. Blanco, and Maria Foreste and Raymond Foreste, individually, and as parents and natural guardians of E.F.

6. Defendants West Coast Fire Protection Corp. and Giovanni R. Blanco's Motion to Strike Plaintiff's Expert (Doc. #55)[10] is **DENIED as moot.**

7. The Clerk is directed to terminate all pending deadlines, enter judgment accordingly, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __15th__ day of August, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[10] Defendants did not rely on the expert's opinion in support of its Motion for Summary Judgment.